UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

TANYA Y.,[1]

       Plaintiff,

  v.                                            1:20-CV-712-LJV
                                                        DECISION & ORDER
COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____

On June 12, 2020, the plaintiff, Tanya Y. ("Tanya"), brought this action under the Social Security Act ("the Act"). She seeks review of the determination by the Commissioner of Social Security ("Commissioner") that she was not disabled.[2] Docket Item 1. On February 2, 2021, Tanya moved for judgment on the pleadings, Docket Item 11; on June 14, 2021, the Commissioner responded and cross-moved for judgment on

---

[1] To protect the privacy interests of Social Security litigants while maintaining public access to judicial records, this Court will identify any non-government party in cases filed under 42 U.S.C. § 405(g) only by first name and last initial. Standing Order, Identification of Non-government Parties in Social Security Opinions (W.D.N.Y. Nov. 18, 2020).

[2] Tanya applied for both Social Security Income ("SSI") and Disability Insurance Benefits ("DIB"). One category of persons eligible for DIB includes any adult with a disability who, based on her quarters of qualifying work, meets the Act's insured-status requirements. *See* 42 U.S.C. § 423(c); *see also Arnone v. Bowen*, 882 F.2d 34, 37-38 (2d Cir. 1989). SSI, on the other hand, is paid to a person with a disability who also demonstrates financial need. 42 U.S.C. § 1382(a). A qualified individual may receive both DIB and SSI, and the Social Security Administration uses the same five-step evaluation process to determine eligibility for both programs. *See* 20 C.F.R §§ 404.1520(a)(4) (concerning DIB); 416.920(a)(4) (concerning SSI).

the pleadings, Docket Item 13; and on July 22, 2021, Tanya replied, Docket Item 14.

For the reasons stated below, this Court grants Tanya's motion in part and denies the Commissioner's cross-motion.[3]

## **STANDARD OF REVIEW**

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id*. This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (alterations omitted) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability

---

[3] This Court assumes familiarity with the underlying facts, the procedural history, and the decision of the Administrative Law Judge ("ALJ") and will refer only to the facts necessary to explain its decision.

2

determination made according to the correct legal principles." *Johnson*, 817 F.2d at 986.

## DISCUSSION

Tanya argues that the ALJ erred in two ways. Docket Item 11-1. First, she argues that the ALJ did not adequately evaluate treating source opinion evidence in formulating her mental residual functional capacity ("RFC").[4] Docket Item 11-1 at 15, 18. Second, she alleges that the ALJ did not adequately evaluate non-acceptable medical source evidence in formulating her physical RFC. *Id.* at 20. This Court agrees that the ALJ erred and, because that error was to Tanya's prejudice, remands the matter to the Commissioner.

"Under the Commissioner's own rules, if the ALJ's 'RFC assessment conflicts with an opinion from a medical source, the [ALJ] must explain why the opinion was not adopted.'" *Dioguardi v. Comm'r of Soc. Sec.*, 445 F. Supp. 2d 288, 297 (W.D.N.Y. 2006) (quoting SSR 96-8p, 1996 WL 374184, at *7). An "ALJ is not obligated to 'reconcile explicitly every conflicting shred of medical testimony,'" *id.* (quoting *Gecevic v. Sec'y of Health & Human Servs.*, 882 F. Supp. 278, 286 (E.D.N.Y. 1995)), and "[t]here is no absolute bar to crediting only portions of medical source opinions," *Younes v. Colvin*, 2015 WL 1524417, at *8 (N.D.N.Y. Apr. 2, 2015). But when an ALJ "chooses to adopt only portions of a medical opinion[, the ALJ] must explain . . . [his] decision to

---

[4] A claimant's RFC "is the most [she] can still do despite [her] limitations," 20 C.F.R. § 416.945, "in an ordinary work setting on a regular and continuing basis," *see Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8P, 1996 WL 374184, at *2 (July 2, 1996)). "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.*

3

reject the remaining portions." *Raymer v. Colvin*, 2015 WL 5032669, at *5 (W.D.N.Y. Aug. 25, 2015) (citing *Younes*, 2015 WL 1524417, at *8).

Moreover, an ALJ must provide "a distinct analysis that would permit adequate review on appeal," *Aung Winn v. Colvin*, 541 F. App'x. 67, 70 (2d Cir. 2013), and each of the ALJ's conclusions must be supported by relevant medical evidence, *see Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). "[T]he ALJ cannot arbitrarily substitute his own judgment for competent medical opinion." *McBrayer v. Sec'y. of Health and Human Servs.*, 712 F.2d 795, 799 (2d Cir. 1983); *see also Fuller v. Astrue*, 2010 WL 3516935, at *5 (W.D.N.Y. Sep. 7, 2010) ("[A]n ALJ is not free to substitute his own lay opinion for opinions from treating sources."). When an ALJ does "not connect the record evidence and RFC findings" or otherwise "explain how the record evidence supported his RFC findings," the decision leaves the court "with many unanswered questions and does not afford an adequate basis for meaningful judicial review." *Gorny v. Comm'r of Soc. Sec.*, 2018 WL 5489573, at *4 (W.D.N.Y. Oct. 29, 2018).

Tanya argues that the ALJ erred in declining to give two opinions from her mental health treating sources controlling weight based on a "selective reading of the medical opinions and the evidence that supported them." Docket Item 11-1 at 14, 25 (emphasis omitted). The Commissioner responds that the ALJ addressed the so-called *Burgess* factors, from *Burgess v. Astrue*, 537 F.3d 117, 128, before assigning less-than-controlling weight to the opinions, thereby honoring the treating physician rule. Docket Item 13-1 at 11-15 (citing *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019)). This Court concludes that the ALJ's failure to assign controlling weight to these treating source opinions is not itself reason to remand. But the ALJ erred in rejecting parts of

4

both opinions based on a selective review of the evidence, and remand is required for that reason.

Tanya's treating psychologist, Louis LaBarber, Ph.D., LCSW, completed a mental RFC questionnaire on July 7, 2018, Docket Item 10 at 581-85, and an employability assessment about three months later, *id.* at 735-36.[5] Dr. LaBarber concluded that Tanya suffers from "panic disorder [with] agoraphobia" and attention deficit hyperactivity disorder ("ADHD"). *Id.* at 735. Regarding Tanya's panic disorder, Dr. LaBarber opined that Tanya experiences "chronic [and] severe panic attacks," *id.* at 736, occurring "at least once a week" in a "sudden unpredictable onset" of symptoms, *id.* at 582. Dr. LaBarber noted that Tanya's panic attacks "have interfered [with her] ability to sustain employment," *id.* at 736, as evidenced by her history of "job termination(s) due to attendance (anxiety-related)," *id.* at 583, and he predicted that they would continue to do so in the future. For example, he found that Tanya's panic attacks and related symptoms would cause her to be absent from work an estimated "three days per month." *Id.* at 585.

Along the same lines, Dr. LaBarber said that Tanya's ability to "[m]aintain regular attendance and be punctual" is "seriously limited,"[6] and that she is "[u]nable to meet

---

[5] Dr. LaBarber also completed two forms for "the NYS Department of Education and the Niagara County Department of Social Services" to which the ALJ gave "little weight." *Id.* at 30, 642-44. Tanya does not argue that the ALJ improperly weighed that evidence.

[6] "Seriously limited" means that the claimant's "ability to function in this area . . . would frequently be less than satisfactory in any work setting." *Id.* at 583.

competitive standards"[7] in her ability to "[c]omplete a normal workday and workweek without interruptions from psychologically based symptoms." *Id.* at 583. Dr. LaBarber also found that Tanya suffers from "[p]ersistent disturbances of mood or affect," noting that she experiences "[r]ecurrent and intrusive recollections . . . which are a source of marked distress." *Id.* at 582. He concluded that she is "[u]nable to meet competitive standards" in "[responding] appropriately to changes in work setting" and "[dealing] with normal work stress." *Id.* at 583.

Regarding Tanya's ADHD, Dr. LaBarber noted she has a history of symptoms that impact her employment, such as "memory/reliability/chronic difficulty [with] concentration/focus." *Id.* He found that she is seriously limited in "[maintaining] attention for two hour[s]" and in "[working] in coordination with or proximity to others without being unduly distracted." *Id.* Given her combined impairments, Dr. LaBarber concluded that Tanya is "very limited" in the following areas: understanding, remembering, and carrying out instructions; maintaining attention/concentration; making simple decisions; interacting appropriately with others; maintaining socially acceptable behavior without exhibiting behavioral extremes; and appearing able to function in a work setting at a consistent pace. *Id.* at 736.

Tanya's treating psychiatrist, Maria Nickolova, M.D., completed a mental RFC questionnaire on September 27, 2018. *Id.* at 685-89. Dr. Nickolova observed that Tanya's "attention span and concentration are impaired" and that she is "easily distracted [and] fidgety." *Id.* at 685. Dr. Nickolova concluded that Tanya is "seriously

---

[7] "Unable to meet competitive standards" is defined on the same questionnaire as "your patient cannot satisfactorily perform this activity independently, appropriately, effectively and on a sustained basis in a regular work setting." *Id.*

limited" in the following areas: understanding, remembering, and carrying out very short and simple instructions; making simple work-related decisions; performing at a consistent pace without an unreasonable number and length of rest periods; asking simple questions or requesting assistance; accepting instructions and responding appropriately to criticism from supervisors; and being aware of normal hazards and taking appropriate precautions.  *Id.* at 687.

With respect to possible employment, Dr. Nickolova found that Tanya was "unable to meet competitive standards" in the following areas: maintaining attention for two hour segments; maintaining regular attendance and being punctual; sustaining an ordinary routine without special supervision; working in coordination with or proximity to others without being unduly distracted; completing a normal workday or workweek without interruptions from psychologically based symptoms; getting along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; responding appropriately to changes in a routine work setting; and dealing with normal work stress.  *Id.*  Dr. Nickolova opined that Tanya "becomes overwhelmed [and] stressed easily," *id.* at 688, and that she suffers from "[g]eneralized persistent anxiety," "[m]ood disturbance," *id.* at 686, and "[r]ecurrent and intrusive recollections . . . which are a source of marked distress," *id.*  She concluded that Tanya's combined impairments would cause her to be absent from work "[m]ore than four days per month."  *Id.* at 689.

In formulating Tanya's mental RFC,[8] the ALJ gave "partial weight" to Dr. LaBarber's July 2018 opinion and Dr. Nickolova's opinion, concurring with their findings that in certain areas of mental functioning, Tanya's abilities were "limited but satisfactory."[9]  But the ALJ rejected as "overstated," or did not address at all, Dr. LaBarber's and Dr. Nickolova's findings of significant mental impairments.  *See id.* at 29-30.  And the ALJ afforded "little weight" to Dr. LaBarber's October 2018 opinion that Tanya was "'very limited' in all areas of work[-]related mental functioning as shown on the assessment form."[10]  *Id.* at 31.[11]

In rejecting or discounting Dr. LaBarber's and Dr. Nickolova's opinions, the ALJ did nothing more than broadly conclude that they "appear to be overstated," *id.* at 30, "appear overstated," *id.*, and are "overstatement[s] of [Tanya's] functional limitations and

---

[8] The ALJ found that Tanya had the RFC to "perform simple, routine and repetitive tasks and perform [sic] simple work[-]related decisions.  She could occasionally interact with supervisors and coworkers, but never interact with the public."  *Id.* at 25.  That RFC incorporated few of the limitations about which Tanya's treating providers opined.

[9] The ALJ specifically accepted Dr. LaBarber's opinion that Tanya has "'limited but satisfactory . . . ability to make simple work[-]related decisions, carry out short and simple instructions and appropriately deal with others," *id.* at 29-30, and Dr. Nickolova's opinion that Tanya has "'limited but satisfactory' ability to interact appropriately with the public, maintain socially appropriate behavior, and travel to unfamiliar places," *id.* at 30.

[10] The ALJ incorrectly said that Dr. LaBarber found Tanya to be "'very limited' in *all* areas" listed.  *Id.* at 31 (emphasis added).  In fact, Dr. LaBarber found that Tanya had no limitations in "maintain[ing] basic standards of personal hygiene and grooming."  *Id.* at 736.

[11] In addition to Dr. LaBarber and Dr. Nickolova's opinions, the ALJ gave "little weight" to the August 11, 2016 assessment of "state-agency reviewing psychologist" D. Bruno, Ph.D.  *Id.* at 29 (citing *id.* at 114-127, 471-73).  In essence, the ALJ decided not to talk about Bruno because Dr. Bruno did not provide a function-by-function assessment of Tanya's impairments.  *Id.* at 29.

inconsistent with the above noted treatment records," *id.* at 31.  He did not otherwise explain how they were exaggerations, nor did he even say with what records he found them inconsistent.  *Id.* at 30-31.  Even worse, he did not address the remarkable consistency between the conclusions of Dr. LaBarber, Tanya's treating psychologist, and Dr. Nickolova, Tanya's treating psychologist.  *See, e.g., id.* at 583 (Dr. LaBarber's opinion finding Tanya unable to meet competitive standards in "[completing] a normal workday and workweek without interruptions from psychologically based symptoms," "[getting] along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes," "[responding] appropriately to changes in a routine work setting," "[dealing] with normal work stress"); *id.* at 686 (Dr. Nickolova's opinion finding Tanya unable to meet competitive standards in these same areas).

In other words, both Tanya's treating psychologist and her treating psychiatrist found that she had significant limitations in performing basic tasks that would affect her ability to work, but the ALJ discounted those opinions without adequately explaining why or addressing their similarities.  In doing so, the ALJ erred by substituting his lay judgment for the opinions of not one, but two, treating sources.  *See Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) ("While an ALJ is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who submitted an opinion to or testified before him.").  And he also failed to "provide an 'accurate and logical bridge' between the evidence and the conclusion that the claimant is not disabled," so that the reviewing court could "'assess the validity of the agency's ultimate findings and afford [the] claimant meaningful judicial review.'"  *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir.

2008) (alteration in original) (quoting *Young v. Barnhart,* 362 F.3d 995, 1002 (7th Cir. 2004))).

What is more, as Tanya correctly observes, the findings that the ALJ rejected as "overstated" or "inconsistent" were in fact supported by the record, including the very treatment notes the ALJ cited to discount them. *See* Docket Item 11-1 at 16, 19. For example, the ALJ discounted Dr. Nickolova's opinion about limitations on attention and concentration as inconsistent with her "own progress notes." Docket Item 10 at 30. But Dr. Nickolova's treatment records actually support her findings. *Compare id.* at 687 (Dr. Nickolova's opinion finding Tanya "unable to meet competitive standards" in her ability to "[r]emember work-like procedures," "[m]aintain attention for two-hour segment[s]," and "[c]omplete a normal workday and workweek without interruptions from psychologically based symptoms"), *with id.* at 478, 484, 487, 661, 664, 691 (Dr. Nickolova's notes documenting that Tanya's "[a]ttention span and concentration are impaired," Tanya's reports of forgetfulness in daily activities, and being "easily distracted and fidgety.").

For similar reasons, the ALJ rejected Dr. LaBarber's opinion that Tanya is unable to meet competitive standards in her ability to "[a]ccept instructions and respond appropriately to criticism from supervisors," "[g]et along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes," and "[d]eal with normal work stress." *Id.* at 583. But the record is replete with evidence supporting these findings. *See, e.g., id.* at 687 (Dr. Nickolova's finding Tanya to be either "seriously limited" or "unable to meet competitive standards" in each of these areas); *id.* at 444, 453, 456, 459, 462, 482 ("problems in relationships with others were discussed by the patient. We

addressed the patient's instances of impulsivity"); *id.* at 649 (focus of Tanya's treatment on "chronic stress").  Indeed, the ALJ himself referred to Tanya's "history of interpersonal issues," *id.* at 31, as well as her struggles with emotional instability, *id.* at 28, 31 (ALJ's decision citing Tanya's "ongoing friction with others, such as her mother, property owner and personal trainer," and troubles with persistent mood swings).

And Dr. LaBarber's findings that Tanya is "very limited" in "[maintaining] attention/concentration" and in understanding, remembering, and carrying out instructions, *id.* at 736, are consistent even with the progress notes cited by the ALJ.  More specifically, the records cited by the ALJ note that while Tanya sometimes reported less difficulty in her "ability to concentrate and pay attention" and being less "easily distracted[,]  fidgety . . . [and] forgetful," she still continued to struggle in those areas.  *Id.* 444, 453, 456, 459. The same records also included examination findings that Tanya's "[a]ttention span and concentration are impaired." *See id.* at 444, 453, 456, 459, 462, 653, 661.  So in some ways, the records actually support the opposite of the ALJ's conclusions.  And to the extent that the records support the conclusions that the ALJ reached, they simply were isolated examples of reported improvement—not evidence that Tanya had no disability.  *Cf. Estrella*, 925 F.3d at 97 ("Cycles of improvement and debilitating symptoms [of mental illness] are a common occurrence, . . . [and so] it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is [not disabled]."  (first alteration in original) (quoting *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014)).

This is not a case like *Schillo v. Kijakazi*, 2022 WL 1020381 (2d Cir. Apr. 6, 2022). In *Schillo*, the Second Circuit found that the ALJ appropriately gave less-than-controlling weight to the plaintiff's treating source opinions when she had good reasons to do so and explained those reasons in detail. For example, the ALJ in *Schillo* cited "specific portions of the record that undercut [the treating physician's] opinion," *id.* at 30, and "pars[ed] through each data point[,] . . . not resting the disability determination on an unrepresentative 'one-time snapshot' of Schillo's status," *id.* at 32-33. Here, in contrast, the ALJ supported his decision with only conclusions and did not cite specific record evidence as a basis for discounting the treating source opinions.

Although the ALJ was not required to accept everything about which Dr. LaBarber and Dr. Nickolova opined, *see Younes*, 2015 WL 1524417, at *8—or even about which they both agreed—he was required to support his assessment of their opinions with record evidence and to explain why he disagreed with two treating sources who agreed with one another, *see Raymer*, 2015 WL 5032669, at *5. His failure to do so was error requiring remand. And on remand, the ALJ must either adequately explain why he does not credit Dr. LaBarber's and Dr. Nickolova's findings that Tanya suffers from significant limitations in the areas of mental functioning discussed above and support his explanation with record evidence, or he must incorporate all those limitations into the RFC.[12]

---

[12] This Court "will not reach the remaining issues raised by [Tanya] because they may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

**CONCLUSION**

The Commissioner's motion for judgment on the pleadings, Docket Item 13, is DENIED, and Tanya's motion for judgment on the pleadings, Docket Item 11, is GRANTED in part and DENIED in part. The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated: April 14, 2022
Buffalo, New York

 */s/ Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE